UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ERIC SMITH, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 4:15CV01388 AGF |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Eric Smith was not disabled, and, thus, not entitled to Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner shall be reversed and the case remanded for further proceedings.

**BACKGROUND**

Plaintiff, who was born on December 15, 1978, filed his applications for benefits on December 19, 2011 (with a protective filing date of November 23, 2011), alleging a disability primarily due to bipolar disorder. After Plaintiff's application was denied at the initial administrative level, he requested a hearing before an Administrative Law Judge ("ALJ"). Such a hearing was held on August 20, 2013. By decision dated April 8, 2014, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform certain jobs that were available in the national economy, and was thus not disabled under

the Act. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on July 14, 2015. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

**Agency Records**

On December 19, 2011, an employee of the Social Security Administration who interviewed Plaintiff in connection with his application for benefits, observed as follows:

> [Plaintiff] kept switching the subject, talking about things that happened in his childhood, prison, and at different jobs. He had difficulty answering questions because he would forget the question fairly quickly. I had to repeat and explain the same information several times. He was unsure what his condition was, and he was paranoid about giving the information. He kept saying people were going to steal his identity.

(Tr. 125.)

**Medical Evidence**

On February 9, 2010, Plaintiff underwent psychiatric assessment, apparently at the referral of his parole officer.[1] Plaintiff reported that he believed that messages on the TV were related to things he was doing or planning, but he denied auditory hallucinations, as well as anxiety, depression, or visual hallucinations. On mental status examination, Plaintiff's memory was intact and he had adequate insight and judgment. Plaintiff was

---

1  The record indicates that Plaintiff had spent five years in prison on a weapons charge and was released in August 2007.

diagnosed with possible psychosis, an impulse control problem, antisocial personality disorder, and a Global Assessment of Functioning ("GAF") score of 50-55.[2]  (Tr. 189-91.)

On February 2, 2012, Plaintiff established psychiatric care with Shazia Malik, M.D. Dr. Malik observed that Plaintiff was suspicious, affect was constricted, mood was depressed and anxious, thought process was tangential, paranoia was exhibited, concentration was decreased, and insight and judgment were fair.  Dr. Malik assessed bipolar disorder and a GAF score of 55.  He prescribed Depakote (used to treat manic episodes related to bipolar disorder) and Latuda (used for treatment of bipolar depression), and outpatient psychotherapy sessions twice weekly.  (Tr. 277-78.)

On February 27, 2012, Lloyd Moore, Ph.D., conducted a consultative mental status examination at the request of Defendant.  Plaintiff reported that, although his drivers' license was suspended due to a motor vehicle accident, he drove himself to the evaluation. He reported that he got married in 2011 and was living with his wife.  Plaintiff graduated from high school and went to community college for one semester.  He then went to barber school but was kicked out for "having an encounter with a superviser."  Plaintiff's work history was sparse; he reported that he was fired multiple times for losing his temper

---

2  A GAF score represents a clinician's judgment of an individual's overall ability to function in social or occupational settings, not including impairments due to physical or environmental limitations.  Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32.  GAF scores of 31-40 indicate some impairment in reality testing or communication or a major impairment in social or occupational functioning; scores of 41-50 reflect a serious impairment in these functional areas; scores of 51-60 indicate a moderate impairment; scores of 61-70 indicate a mild impairment.  In June 2013, the DSM-V replaced the "more limited" GAF score system with the WHO Disability Assessment Schedule (WHODAS).

and his inability to focus on the job. Plaintiff reported that he last worked in April 2011 when he was fired for "inappropriate behavior" with a female worker. He never kept a job for more than three months, with the exception of being a warehouseman for two years. Dr. Moore wrote that Plaintiff was unable to provide specific dates for his employment, and in general could not provide accurate data, which Dr. Moore opined was due to Plaintiff's "inability to focus on time as opposed to malingering." (Tr. at 219.) Dr. Moore observed that Plaintiff was oriented and his memory was intact although he had difficulties with specific times and dates. His general knowledge was fair to good, he could repeat seven digits forward on immediate recall and five digits backward, and he performed simple mathematical calculations without difficulty.

Plaintiff reported that he was currently taking Depakote and Latuda. He denied suicidal or homicidal ideation, but reported hearing voices. Dr. Moore observed that Plaintiff presented with some inappropriate behaviors like laughing at inappropriate times. At one point in his report, Dr. Moore wrote that Plaintiff presented with some delusional thinking, but shortly after that comment, he wrote that Plaintiff did not display any delusional thinking. The following statement appears in Dr. Moore's report: "[Plaintiff] is unemployed and states he can find a job and does not need to work a job." (Tr. at 221.)

Dr. Moore diagnosed bipolar affective disorder, intermittent explosive disorder, personality disorder with antisocial traits, and a GAF of 50-55. He noted Plaintiff's inability to develop, maintain, and sustain employment; poor coping skills; and chronic difficulties with hyperactivity. Dr. Moore assessed a moderate impairment in activities of

daily living, in getting along with others for any length of time, and in concentration, persistence, and pace. He opined that Plaintiff was not capable of handling funds in his own best interest.

On March 1, 2012, Plaintiff reported to Dr. Malik that he did not like his group therapy sessions, and felt that people stared at him and talked to him. Plaintiff reported sleeping only four hours a day, a lack of patience, and that the television talked to him. Dr. Malik doubled the dose of Depakote and increased the Latuda. (Tr. 279.) Plaintiff missed his appointment scheduled for March 22, 2012, and next saw Dr. Malik on March 29, 2012, when Plaintiff's wife accompanied him and reported that Plaintiff was experiencing increased anxiety, paranoid symptoms, poor sleep, and that he believed the television was talking to him.

On April 18, 2012, Kyle DeVore, Ph.D., a non-examining consulting psychologist, completed a Psychiatric Review Technique Form. Dr. DeVore indicated that the record substantiated a diagnosis of bipolar disorder and antisocial personality disorder. He indicated in checkbox format that Plaintiff had no limitation in activities of daily living; moderate limitation in maintaining social functioning; mild limitation in the area of maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. He found no evidence of "C" criteria of the Commissioner's regulations. (Tr. at 239-40.) As explained below, "C" criteria are met if a mental disorder has been of at least two years duration with either (1) repeated episodes of decompensation, (2) such marginal adjustment that even a minimal increase in mental

5

demands or change in the environment would be predicted to cause the individual to decompensate, or (3) one or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. As supporting evidence for his opinions, Dr. DeVore summarized Dr. Moore's report underlining a few parts, including the statement quoted above that Plaintiff reportedly said he could find a job but did "not need to work a job." (Tr. at 241.)

On May 24, 2012, Plaintiff reported to Dr. Malik that his medication was expensive, and so he took half the amount prescribed. He also reported that he went to a concert. Dr. Malik noted that Plaintiff still believed the TV gave him messages.

On September 10, 2012, Plaintiff was transported by the police to the emergency room for suicidal ideation and chest pain. Upon examination, he was not admitted to the hospital and released to police custody. Two days later he was brought back to the ER by the police and was diagnosed with depression and again released.

On October 25, 2012, Dr. Malik reported medication noncompliance. On November 22, 2012, Plaintiff sought inpatient psychiatric hospitalization, reporting suicidal ideation with a plan to overdose. He also reported homicidal ideation towards his ex-girlfriend, and command auditory hallucinations telling him to kill himself and to shoot a police officer who had arrested him one month prior. At the time, Plaintiff was not taking his mental health medications. Plaintiff was admitted to the hospital for four days. His diagnosis at discharge was schizophrenia and bipolar disorder, and a GAF of 40. Medications at discharge were Depakote, Latuda, and Risperdal (used for treatment of

schizophrenia and bipolar disorder), and Plaintiff was referred for outpatient therapy. On December 11, 2012, Dr. Malik again reported that Plaintiff had been noncompliant with treatment recommendations. The last note in the record from Dr. Malik reported that Plaintiff did not show up for his January 22, 2013 appointment.

**Evidentiary Hearing of August 20, 2013**

Plaintiff testified that he went through the day feeling like people were talking about him, that he liked to isolate himself, and that he had arguments with others and outbursts and mood swings. Plaintiff testified that he was separated from his wife and currently living with his mother. He described panic attacks lasting an hour and a half, brought on by being in public. Plaintiff stated that he had good days and bad days, with more bad days. He had had outbursts with coworkers and supervisors, and lost a job for yelling at his supervisor. He also reported a lifelong history of hearing voices on a daily basis throughout the day, describing a female voice and a male voice. He also testified to hearing voices on TV that seemed to know what he was about to do.

It was noted that Plaintiff had a service dog with him and he explained that the dog was to calm his anxieties. He stated that due to his auditory hallucinations, he needed about eight breaks throughout the day (besides a lunch break and two other regular breaks), each for about seven or eight minutes, to get away from people.

The ALJ asked a vocational expert ("VE") whether there were jobs in significant numbers in the economy that could be performed by a person of Plaintiff's age, education, and vocational background (no past relevant work), with the following mental

impairments: limited to simple, routine, repetitive work, without fast-paced production standards; limited to only occasional superficial interaction with coworkers and supervisors and not with the general public. The VE responded in the affirmative, and testified that industrial cleaner and laundry laborer were examples of such jobs. The VE testified that there were no jobs such a person could perform if he also required one unscheduled break per hour of seven to eight minutes long each day, or even just three days a week.

**ALJ's Decision of April 8, 2014**

The ALJ found that Plaintiff had not performed substantial gainful activity since his application date of November 23, 2011, and that Plaintiff had the severe impairment of bipolar disorder with psychotic features. Applying the special criteria for assessing the severity of mental impairments,[3] the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a

---

3   Under the Commissioner's regulations, an affective disorder such as bipolar disorder is deemed disabling if "A" criteria and "B" criteria are met, or if "C" criteria" are met.  20 C.F.R. 404, Pt. 404, Subpt. B, App. 1 (Appendix 1, Listing 12.04.)  "A" criteria (medical findings) are met if there is a medically documented persistence of a depressive, manic, or bipolar syndrome.  "B" criteria (functional limitations) are met if there is a marked functional limitation in at least two of the following four categories: (1) daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) repeated episodes of decompensation, each of extended duration.  "C" criteria are met if the disorder has been of at least two years duration with either (1) repeated episodes of decompensation, (2) such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or (3) one or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

deemed-disabling impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. This conclusion was based on the ALJ's findings that Plaintiff had only moderate difficulties in activities of daily living; social functioning; concentration, persistence, or pace; and no episodes of decompensation that lasted for an extended duration. Thus, because Plaintiff's mental impairments did not cause at least two "marked" limitations in these functional areas, or one "marked" limitation and repeated episodes of decompensation, each of extended duration, the "B" criteria were not met. The ALJ also concluded that the "C" criteria were not met.

The ALJ found that Plaintiff had the RFC to perform work at all exertional levels with the following non-exertional limitations: limited to simple, routine, repetitive work without fast-paced production standards; and limited to occasional, superficial interaction with coworkers and supervisors, and none with the general public. In reaching this determination, the ALJ stated that the evidence of record shows significant noncompliance with treatment and medications. The ALJ also believed that the credibility of Plaintiff's allegations was diminished by his poor work record.

The ALJ noted that his RFC assessment was consistent with Dr. DeVore's opinion, which, according to the ALJ, was based on, "a comprehensive review of the evidence of record, including subjective allegations, records from [Plaintiff's] treating mental health providers, the clinical observations and conclusions from [Dr. Moore's] psychological consultative examination, and [Plaintiff's] activities of daily living." (Tr. at 19.) The ALJ gave "great weight" to Dr. DeVore's opinion, which, according to the ALJ, was

consistent with Dr. Moore's assessment of moderate impairment in activities of daily living, social functioning, and concentration, persistence, and pace. *Id.* Relying on the VE's testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff perform, and thus, that he was not disabled.

**Arguments of the Parties**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence in the record. More specifically, Plaintiff argues that the ALJ failed to recognize that Dr. DeVore could not have based his opinion on "a comprehensive review of the evidence" because Dr. DeVore's opinion of April 18, 2012, was prior to much of the evidence of record through the date of the hearing decision almost two years later. Plaintiff further argues that relying on a non-examining consultant to assess a claimant's RFC does not satisfy the ALJ's duty to fully and fairly develop the record.

Plaintiff faults the ALJ for failing to evaluate any of Dr. Moore's clinical findings, such as inappropriate workplace-behavior, perhaps secondary to "impulse-control difficulty." Rather, the only part of Dr. Moore's report that the ALJ cited, when determining the weight to give Dr. DeVore's opinion, was Dr. Moore's conclusion that Plaintiff had only moderate limitations in activities of daily living, social functioning, and concentration, persistence and pace.

Plaintiff maintains that the ALJ also erred in failing to find that personality disorder with antisocial traits was another severe impairment of Plaintiff's, as diagnosed by Dr. Moore, and confirmed by Dr. DeVore. Plaintiff posits that the symptoms of this

impairment would have affected Plaintiff's ability to obey work-rules, to be respectful of others at work, and even to show up for work on a regular and continuing basis.  Plaintiff argues that the ALJ failed to properly consider the issue of failure to follow prescribed treatment in that the ALJ failed to determine whether any prescribed treatment would have restored Plaintiff's ability to work, and failed to evaluate whether Plaintiff possessed the insight to understand his need for treatment.  Lastly, Plaintiff argues that the ALJ improperly failed to consider third-party evidence, namely, the statements described above of the SSA employee and Plaintiff's wife.  Plaintiff asks that the ALJ's decision be reversed and the case remanded for further evaluation.

In response, Defendant points out that the ALJ's RFC finding was more restrictive than Dr. DeVore's opinion, and argues that Plaintiff has shown no error in the ALJ's analysis.  According to Defendant, the ALJ properly considered Dr. Moore's clinical findings; properly analyzed the evidence of Plaintiff's noncompliance with treatment, within the context of the analysis of Plaintiff's credibility; and properly considered the whole record, which supports the ALJ's decision.

## **DISCUSSION**

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court "must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole."  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).  The court "'may not reverse . . . merely because substantial evidence would

support a contrary outcome.  Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If so, benefits are denied.  If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments.  A special technique is used to determine the severity of mental disorders.  This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  *Id*. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in Appendix I.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  A disability claimant's RFC is the most he can still do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  In *McCoy v. Schweiker*, 683 F.2d 1138 (8th Cir. 1982) (en banc), *abrogated on other grounds*, 524 U.S. 266 (1998), the Eighth Circuit

defined RFC as the ability to do the requisite work-related acts "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Id.* at 1147.

If the claimant can perform his past work, the claimant is not disabled. If he cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors—age, education, and work experience. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

**Weight Accorded to the Opinion of Dr. DeVore in Determining Plaintiff's RFC**

The Eighth Circuit recently reaffirmed that "the opinions of nonexamining medical sources are generally given less weight than those of examining sources." *Papesh v. Colvin*, 786 F.3d 1126, 1133 (8th Cir. 2015) (citing *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010). That is especially true when, like here, the nonexamining consultant's opinion is given in checklist format. *Id.* (citing *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). The Commissioner's regulation provides that "because nonexamining sources have no examining or treating relationship . . . , the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(c)(3).

Here, the Court finds that Dr. DeVore's explanation supporting his opinions is not entitled to substantial weight. His only explanation is a brief summary of Dr. Moore's report, underlining certain portions. Neither Dr. DeVore nor the ALJ addressed Dr.

13

Moore's clinical findings and observations, such as Plaintiff's inability to develop, maintain, and sustain employment; Plaintiff's poor coping skills and chronic difficulties with hyperactivity; and Plaintiff's inability to handle funds in his own best interest.

A more significant problem with the ALJ giving "great weight" to Dr. DeVore's report is that it was completed prior to serious mental health episodes that Plaintiff experienced before the evidentiary hearing, and that were part of the medical record before the ALJ. Under these circumstances, the Court cannot say, even under the deferential standard accorded an ALJ's decision, that the ALJ's RFC determination, and resulting decision that Plaintiff was not disabled, is supported by substantial evidence in the record as a whole. The Court believes that the case must be remanded for further proceedings. On remand, the ALJ should consider obtaining the opinion of a medical expert on Plaintiff's mental condition.

It is true, as Defendant argues, that the failure to follow a recommended course of treatment weighs against a claimant's credibility. *See, e.g.*, *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). But a mentally ill person's noncompliance with medication can be the result of the mental impairment itself and therefore may not be willful or without justifiable excuse. *Pate–Fires v. Astrue*, 564 F.3d 935, 945-46 (8th Cir. 2009) (remanding case for consideration of whether the plaintiff's noncompliance with prescribed treatment was excusable due her bipolar disorder). On remand, the ALJ should consider whether Plaintiff's failure to follow prescribed treatment is a manifestation of his bipolar disorder.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings.

A separate Judgment will accompany this Memorandum and Order.

                                              AUDREY G. FLEISSIG
                                              UNITED STATES DISTRICT JUDGE

Dated this 24th day of May, 2016